IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS


JOSEPH F. ROGGI,

        Plaintiff,

   Vs.

                         No. 12-4073-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.


MEMORANDUM AND ORDER

      This is an action to review the final decision of the defendant

Commissioner of Social Security ("Commissioner") that denied the claimant

Joseph Roggi's applications for disability insurance benefits ("DIB") under Title

II of the Social Security Act ("Act") and for supplemental security income

("SSI") under the Title XVI of the Act. With the administrative record (Dk. 9)

and the parties' briefs on file pursuant to D. Kan. Rule 83.7.1 (Dks. 12, 17, and

18), the case is ripe for review and decision.

**STANDARD OF REVIEW**

      The court's standard of review is set forth in 42 U.S.C. § 405(g),

which provides that the commissioner's finding "as to any fact, if supported by

substantial evidence, shall be conclusive." The court also reviews "whether the

correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168,

1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will

"meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant

is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id.* Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The evaluation at steps four and five makes use of the agency's RFC assessment. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

**PROCEDURAL HISTORY**

Mr. Roggi was represented by counsel at the administrative hearing held before the administrative law judge ("ALJ") on September 21, 2011. (R. 32-67). Roggi alleged a disability beginning on May 7, 2010. The ALJ issued his decision on November 4, 2011, and denied Roggi's claim of disability. (R. 10-31).

At step one, the ALJ found that Roggi had not engaged in

substantial gainful activity since May 7, 2010. (R. 15). At step two, the ALJ determined that Roggi had the following severe impairments:   "degenerative disc disease, obesity, and depression." (R. 15). The ALJ found at step three that Roggi's impairments did not meet or equal a listed impairment. (R. 16). In evaluating Roggi's mental impairment, the ALJ found no marked difficulties in the function areas, but he did find moderate difficulties in the areas of social functioning and concentration, persistence or pace. (R. 16).

At step four, the ALJ determined that Roggi had the RFC to perform light work:

> in that, he can frequently lift/carry 10 pounds, occasionally lift/carry 20 pounds, stand or walk for six hours of an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant also has the following nonexertional limitations that further limit his ability to perform light work: can occasionally climb ramps or stairs, but should never climb ropes, ladders, or scaffolds; can occasionally stoop, kneel, crouch, or crawl; should avoid concentrated exposure to extreme cold, wetness, excessive vibration, unprotected heights, and hazardous machinery; and is limited to the performance of unskilled work that requires no more than occasional contact with the general public and coworkers.

(R. 17). The ALJ found that Roggi was unable to do his past relevant work as a stock clerk. At step five, the ALJ considered Roggi's age, education, work experience and RFC to determine that Roggi could do other work in the national economy. The ALJ concluded Roggi was not disabled from May 7, 2010, through the date of November 4, 2011, and denied his claims for DIB and SSI. (R. 25-26). The Appeals Council denied his request for review, so the ALJ's decision is the final decision of the Commissioner.

**ISSUES**

Disputing the ALJ's RFC determination, Roggi concludes there is not substantial evidence to support the ALJ's finding at step five that he can perform other work of significant numbers in the national economy. Specifically, Roggi challenges the ALJ's weighing of the different medical opinions of record, the ALJ's discounting of Roggi's subjective complaints, and the evidence supporting the ALJ's RFC determination.

**WEIGHING MEDICAL OPINIONS**

"Medical opinions are statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Medical opinions are not to be ignored, and all such opinions are to be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. § 404.1527(c); SSR 96–5p, West's Soc. Sec. Reporting Serv., Rulings 123–24 (Supp. 2012). "An ALJ must evaluate every medical opinion in the record, . . ., although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). A physician who treats a patient regularly over some period of time is recognized as a treating source with better insight into a patient's medical condition and with an opinion that is

generally entitled to "particular weight" or "controlling weight." *Doyal v. Barnhart*, 331 F.3d 758, 762-63 (10th Cir. 2003).1 It is also the rule, however, that the opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

If the medical opinion of a treating source is "well-supported by medically clinical and laboratory diagnostic techniques" and "is consistent with other substantial evidence in the record," then the treating source opinion is entitled to controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks and citations omitted). The ALJ must give a specific, reasoned finding on this controlling weight issue. *Id*. If the treating source opinion is not given controlling weight, then it is "still entitled to deference" and weighed according to the factors of 20 C.F.R. §§ 404.1527 and 416.927 by which all medical opinions are evaluated. These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4)

1 The regulations break down "acceptable medical sources" into three kinds: "Treating sources" provide the claimant "with medical treatment or evaluation" in "an ongoing treatment relationship." 20 C.F.R. §§ 404.1502; 416.902. "Nontreating sources" have "examined" a claimant but do "not have, or did not have, an ongoing treatment relationship." *Id*. "Nonexamining sources" have not examined a claimant but provide a medical opinion in the case. *Id*.

> consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.
>
> *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted). After considering the pertinent factors, the ALJ must "give good reasons in [the] notice of determination or decision" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2). Finally, if the ALJ rejects the opinion completely, he must then give "'specific, legitimate reasons'" for doing so. *See Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)).

*Watkins v. Barnhart,* 350 F.3d at 1301.

<u>Dr. Melvin Berg, Consultative Examining Psychologist and Non-Examining State Agency Psychological Consultants</u>

On September 13, 2010, Dr. Berg saw Roggi for an independent consultative mental status examination at the request of the Kansas Disability Determination Services. (R. 521, 556). After the one-hour visit, Dr. Berg prepared a consultation report that summarized Roggi's answers on the topics of his personal history, daily living activity, and reasons for not working. (R. 521-22). The report also addresses Dr. Berg's evaluation of Roggi's mental status:   he has an "average range of intellectual ability," his judgment is "mildly impaired by a sense of helplessness," he shows "limitations in his ability to attend to and process simple information," his "immediate memory for simple information was variable" and "for more complex information was borderline," and his "long-term memory was intact." (R. 522-23). The report concludes:

**SUMMARY:**
The Claimant has been suffering from chronic pain. His pain results in sleeplessness, which in turn causes fatigue and problems with attention and memory. He has grown depressed as a result of his impairment. His current depression is an exacerbation of a chronic low grade depressive condition, marked by self-consciousness and social anxiety. His diagnosis is Major Depressive Disorder (296.21) and Anxiety Disorder, NOS (300.). His GAF is 49.

**ABILITY TO PERFORM WORK RELATED ACTIVITIES:**
The Claimant demonstrates some limitation in his ability to attend to and process simple information. He experiences difficulty as the complexity of the material increase by minor increments. Overall, his pace varies from borderline to average. He does try to persist, despite his difficulties. His ability to learn and retain new information, however, is impaired as a result of his lapses in attention.

The Claimant is able to accommodate to, and adjust to, the demands of superficial interpersonal interaction. However, he is avoidant of interpersonal contact, as he is extremely bashful, shy and self-conscious.

(R. 523).

Approximately nine months later, Dr. Berg completed a "Mental Residual Functional Capacity Questionnaire" based on the prior one-hour examination. (R. 556). The record does not evidence who requested or made contact with Dr. Berg to complete this additional questionnaire. This later document certainly contains opinions indicating a more serious mental disability than what are stated in Dr. Berg's initial consultation report. Here are some examples. As for findings demonstrative of Roggi's mental impairment, Dr. Berg wrote:   "Claimant has little psychological resilience. As a result, his depression and anxiety result in passivity, withdrawal and inability to persist." (R. 556). He described Roggi's prognosis as "poor." *Id.* As far as mental

abilities needed for unskilled work, Dr. Berg checked six categories in which Roggi's abilities were poor or none, including regular attendance, completing a normal workday or workweek, consistent performance pace, and dealing with normal work stress. (R. 558). Dr. Berg gave the following as the findings and explanation for his assessment:

> Mental status exam shows lapses in immediate memory and poor delayed memory. His description of his daily routine shows an inability to tolerate stress. Stress causes him to withdraw and slide into passivity and helplessness. He is intolerant of criticism and shuns interpersonal contact.

(R. 558). Dr. Berg also opined that Roggi's impairments would cause him to miss four days of work each month. (R. 560).

The ALJ gave "[p]artial weight" to Dr. Berg's opinion "because he performed an examination of the claimant prior to the formulation of his opinions." (R. 22). While the ALJ agreed that Dr. Berg's diagnoses seem "relatively consistent with his examination findings," the ALJ believed that Roggi's lack of mental health treatment "indicates that his mental health impairments are not as limiting . . . as opined by Dr. Berg." (R. 22). The ALJ believed that "Dr. Berg based his report on the uncritical acceptance of all of the claimant's subjective complaints." (R. 20). Because Dr. Berg had only examined Roggi for one hour, the ALJ found it "very difficult to believe that Dr. Berg was able to reach such a severe conclusion" that Roggi would miss four days of work per month due to mental health limitations. (R. 22). The ALJ also

opined "[i]t is reasonable to assume that if the claimant were to receive even minimal mental health treatment that the resultant limitations from his mental health impairment would at least improve to some extent." (R. 23). The ALJ concluded that limiting Roggi to unskilled work with only occasional contact with public and co-workers is "generally consistent with the findings from Dr. Berg's examination." (R. 23). As for the Mental RFC questionnaire prepared by Dr. Berg, the ALJ noted that its timing was "interesting" and that Dr. Berg admitted to not treating Roggi and offered no opinion on how the claimant could function with treatment. (R. 23).

In his decision, the ALJ gave "[s]ignificant weight" to the opinions of the non-examining state agency psychological consultants "because their opinions and analysis are generally consistent with the evidence of record as a whole." (R. 23). The ALJ, however, did not accept the consultants' opinion on mild limitations in activities of daily living ("ADLs"), as "the evidence indicates that any limitations in this are resultant from physical impairments as opposed to being resultant from psychological impairments. Therefore, the claimant has no limitations in this area based on the evidence of record as a whole." (R. 23).

Being an examining medical source and a clinical psychologist, Dr. Berg's opinion generally deserves more weight than a non-examining physician or a physician who is not a specialist. At the same time, the ALJ is to

consider whether Dr. Berg's opinion is supported by and consistent with his own records and explanations, other medical opinions and signs, and other evidence of record. 20 C.F.R. 404.1527(c)(3),(4). It is true that the ALJ did acknowledge that Dr. Berg's diagnoses are "relatively consistent with his examination findings." (R. 22). The ALJ, however, is critical of Dr. Berg's mental status examination for uncritically accepting Roggi's complaints when, in the ALJ's assessment, the evidence of record justifies discrediting the severity of Roggi's complaints due to the lack of mental health treatment. The plaintiff challenges that the ALJ's finding does not cite evidence of record and is not supported by substantial evidence. "[F]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (internal quotation marks and citation omitted).

The ALJ's conclusion is certainly sustained by a reading of Dr. Berg's own report prepared after the single evaluation. There is no evidence to suggest that Dr. Berg ever examined Roggi other than this one-hour evaluation or that he ever treated Roggi. Nor is there anything to suggest that Dr. Berg obtained and reviewed other medical records in preparing his report. Thus, as considered and weighed by the ALJ, Dr. Berg's opinion is largely based on his acceptance of Roggi's subjective complaints that were made in the one-hour examination.

12

Roggi also complains that the ALJ erred in considering his lack of mental health treatment without making the four-factor findings set out in *Frey v. Bowen*, 816 F.3d 508, 517 (10th Cir. 1987). This argument is without merit. The Tenth Circuit has "explained in *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000), the *Frey* requirements apply when such noncompliance is cited as a stand-alone basis for denying benefits under 20 C.F.R. §§ 404.1530 and 416.930, not when it is merely part of a credibility assessment. *Qualls*, 206 F.3d at 1372." *Holbrook v. Colvin,* 2013 WL 1150298 at *4 (10th Cir. 2013). The ALJ's decision shows that Roggi's lack of mental health treatment was used to discount Roggi's credibility as to the severity of his mental impairments and Dr. Berg's reliance on them. Thus, the ALJ's failure to discuss these factors is not error.

Roggi takes issue with the ALJ's difficulty in believing that from a single mental status examination, Dr. Berg could opine Roggi would miss four days of work each month. (R. 22). Roggi contends the ALJ does not relate Dr. Berg's opinion to the 49 GAF score he gave Roggi. "[A] GAF of 49, indicat[es] serious symptoms of depression that may include an inability to hold a job. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Revision 2000)." *Harper v. Colvin*, ---Fed. Appx.---, 2013 WL 3285617 at *3 (10th Cir. Jul. 1, 2013). The Tenth Circuit also recognizes, "'While a GAF score may be of considerable help to the ALJ in formulating the

RFC, it is not essential to the RFC's accuracy.'" *Harper*, 2013 WL 3285617 at *3

(quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

Thus, the ALJ is still permitted to consider this score with other evidence on

how the symptoms from the mental impairment affect the ability to work,

thought processes, orientation to time, place, and purpose, and memory

impairments. *Id*. The ALJ did cite the GAF score in his decision, and the case

law affords him the discretion to consider this score along with the other

evidence of mental impairment.

Roggi next takes issue with the ALJ's statement that, "It is

reasonable to assume that if the claimant were to receive even minimal mental

health treatment that the resultant limitations from his mental health

impairments would at least improve to some extent." (R. 23). It is a concern

when the ALJ substitutes his judgment for that of competent medical sources.

*See Allen v. Colvin*, 2013 WL 3994640 at *6 (N.D. Okla. 2013); *see McGoffin v.

Barnhart*, 288 F.3d 1248, 1248 (10th Cir. 2002) (ALJ may not reject treating

physician's opinion based on ALJ's own credibility judgment, speculation or lay

opinion). In his summary, Dr. Berg opined, "The Claimant has been suffering

from chronic pain. His pain results in sleeplessness, which in turn causes

fatigue and problems with attention and memory. He has grown depressed as

a result of his impairment." (R. 523). And after summarizing the claimant's

reasons for not working, Dr. Berg wrote, "Nevertheless, the Claimant has

never had any mental health treatment." (R. 521). The ALJ is not substituting his opinion for Dr. Berg but drawing a fair and reasonable conclusion from the doctor's report, that is, mental health treatment would be a viable option for Roggi in dealing with the depression that had worsened with the aggravated physical condition. The court rejects Roggi's argument of error based on this statement.

Next, the ALJ found that the limitations to unskilled work and only occasional contact with the public and co-workers "are generally consistent with the findings from Dr. Berg's examination." (R. 23). The finding is generally supported by Dr. Berg's initial consultation report of September 13, 2010, but Dr. Berg's later RFC questionnaire dated June 25, 2011, includes some opinions that are difficult to square with the ALJ's finding. The ALJ, however, indicated having some suspicion and less regard for Dr. Berg's later questionnaire that was submitted nine months later without receiving or considering any more evidence of Roggi's mental condition. When the ALJ's finding is placed in this context, the court finds substantial evidence to sustain it.

Roggi next takes aim at the ALJ's finding that, "Significant weight is also given to the opinions of the State agency psychological consultants because their opinions and analysis are generally consistent with the evidence of record as a whole." (R. 23). Roggi contends this conclusory finding fails to

offer any explanation for this determination and to cite any evidence supporting it. The ALJ also rejected the opinion of state agency psychological consultants that Roggi's mental ability was a "mild limitation" on daily living activities. (R. 23). While the ALJ certainly could have provided more details on his finding, the court is satisfied that the record sustains this finding. The state psychological consultants agreed on a mild restriction in daily activities and moderate difficulties in social functioning and concentration, persistence and pace. These opinions are not contradicted by Roggi's recent work history or by his general level of daily activities. Nor can the court find an inconsistency between the ALJ's RFC findings and the psychologists' opinions about Roggi's daily living restrictions.

In conclusion, the court finds the ALJ's decision provides sufficient reasons, explanations and evidence for the weight he ascribed to the opinion of Dr. Berg, a consultative examining psychologist, and to the opinions of the non-examining state agency psychological consultants. If it were de novo review, this court justifiably may have reached a different result in weighing Dr. Berg's opinion, but that is not applicable standard of review and reversal is not otherwise appropriate.

Dr. Pedro Murati

His attorney in the Workers' Compensation proceedings referred Roggi to Dr. Murati for independent medical examinations in October of 2009

and May of 2010. The ALJ gave "[v]ery little weight" to Dr. Murati's opinions after the October 2009 visit and "some weight" to his opinions after the May 2010 visit. (R. 21-22). The court has reviewed the record cited by the ALJ in support of his reasons for the weight findings. While it could have drawn different conclusions from that evidence, the court is satisfied the ALJ provided good reasons that are sustained by the record.

Dr. Robert Barnett

The Workers' Compensation attorney for Roggi referred the case to Dr. Barnett for an opinion on loss of ability to perform work tasks and actual loss of wages. (R. 506). The ALJ gave "no weight" to Dr. Barnett's opinions as they "were provided specifically for" the workers' compensation proceedings, are not relevant to the disability determinations, were made without personally examining Roggi, and were based on other medical opinions already being evaluated. (R. 22). That Dr. Barnett had a telephone conversation with Roggi does not materially undermine the ALJ's reasons or evidence supporting his decision to give this opinion no weight. The court rejects claimant's argument for error.

March 2010 Functional Capacity Assessment

Treating the assessment as "opinion evidence," the ALJ gave it "significant weight":

> As for opinion evidence, significant weight is given to the findings from the March 2010 functional assessment (Exhibit 7F/14-23. The results of

the assessment were notably invalid due to several inconsistencies that indicated a manipulated effort by the claimant. However, the claimant demonstrated the ability to tolerate a seven to eight hour workday with five to six hours of standing, five to six hours of sitting, and seven to eight hours of walking per workday, even after providing a less than full effort. The claimant was noted to have demonstrated the ability to lift 21.4 pounds from a chair to the floor as well. The above-assessed residual functional capacity is well within the parameters of these functional assessment findings.

(R. 21). The KEY Functional Assessment was done at the request of the orthopedist Michael Smith, M.D. and was signed by Jessica Carlson as "Assessment Specialist."

At the hearing, Roggi testified that this functional assessment was administered after he had just completed a shift of work and that he was already hurting. (R. 52). When the evaluators complained to him about giving inadequate effort, Roggi asked for the assessment to be rescheduled due to his prior work and pain and then explained that he was giving his best effort under the circumstances when the testing proceeded. *Id.* Roggi denied that he did not give his best effort on the assessment. *Id.*

Roggi contends that the ALJ fails to explain his reasons for relying on an assessment that is invalid and then appears to draw his own speculative inferences from the assessment. Roggi also challenges the ALJ's reliance on an unacceptable medical source without evaluating the opinion and providing the reasons as required by SSR 06-3p. The Commissioner argues that evidence from other sources may be considered and that the ALJ here is simply noting

his RFC findings are consistent with the assessment results.

Social Security regulations recognize the validity in considering information from others than acceptable medical sources. *See* 20 C.F.R. §§ 404.1502, 404.1513(d). As the Tenth Circuit has summarized, there are medical and non-medical sources that "may provide evidence 'to show the severity of [a claimant's] impairment9s) and how it affects [a claimant's] ability to work.' 20 C.F.R. § 404.1413(d)." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007). The Tenth Circuit explained the background and requirements to SSR 06-03:

> The agency promulgated SSR 06–03p to "clarify how [it] consider[s] opinions from sources who are not 'acceptable medical sources[.]' " SSR 06–03p at *1. Recognizing the growth of managed health care in recent years and the increasing use of medical sources who are not technically "acceptable medical sources," the Ruling states that "[o]pinions from these medical sources … are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Id. at *3.
>
> The Ruling specifies that the factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. § 404.1527(d) and § 416.927(d) apply equally to "all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other [non-medical] sources.'" *Id.* at *4. Thus, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."
> *Id.* at *5.
>
> The Ruling instructs the adjudicator to:
> explain the weight given to opinions from these "other sources," or

> otherwise ensure that the discussion of the evidence in the
> determination or decision allows a claimant or subsequent
> reviewer to follow the adjudicator's reasoning, when such opinions
> may have an effect on the outcome of the case.

*Id.* at *6.

*Frantz v. Astrue*, 509 F.3d at 1301-1302.

The ALJ's decision offers a fair reading of Ms. Carlson's letter explaining her opinion about the "invalid outcome" of the assessment as well as her opinion as to Roggi's ability to tolerate a workday, standing, sitting and walking. (R. 467). Ms. Carlson states that Roggi's identified activity levels "represent less than their true safe capability level." *Id.* The ALJ observed that Ms. Carlson's findings deserved "significant weight," as they were consistent with evidence of record.2 These findings appear consistent not only with ALJ's RFC findings but also with Dr. Murati's work release dated May 11, 2010, just three months after Carlson's functional assessment. Because the ALJ's decision and record as a whole are sufficient for the court to track the ALJ's reasoning here, the court finds no error on this issue.

**CREDIBILITY DETERMINATION**

This court recognizes that credibility determinations peculiarly fall within the province of the fact finder and are not to be upset when supported by substantial evidence. Courts properly should expect credibility findings to

---

2 Courts "have treated the reports of assessment specialists as medical information." *Henderson v. Astrue*, 2009 WL 214569 at *2 (D. Me. 2009) (citations omitted).

be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). It is not within the ALJ's discretion simply to ignore evidence favorable to the plaintiff. *Owen v. Chater*, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

The analysis of pain evidence does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in *Kepler*. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Resort to standard boilerplate language without supporting citations of specific evidence will not suffice for credibility findings. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). It is sufficient when the ALJ's credibility determination is more than boilerplate and is linked to specific findings of fact fairly derived from the record. *White*, 287 F.3d at 909–910.

The court only reviews the sufficiency of the evidence. Although a different finding may be sustained by the evidence, the court may not supplant "the agency's choice between two fairly conflicting views" even if the court may have chosen differently in the first instance. *Oldham v. Astrue*, 509 F.3d 1254, 1257–1258 (10th Cir.2007). A claimant's statements regarding pain are

necessarily subjective and "can be evaluated only on the basis of credibility."

*Thompson v. Sullivan*, 987 F.2d at 1488–89. The credibility determination of

claimant's subjective complaints should include considering an "individual's

daily activities;" the "location, duration, frequency, and intensity of the

individual's pain;" the "dosage and effectiveness of medications taken to

alleviate pain;" "the type, dosage, effectiveness, and side effects of any

medication . . . taken to alleviate pain or other symptoms;" and "[a]ny other

factors concerning the individual's functional limitations and restrictions due to

pain or other symptoms." *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir.

2004).

In his credibility findings, the ALJ noted Roggi "has a

well-documented history of physical impairments" and resulting physical

limitations. (R. 23). The ALJ, however, keyed on Roggi's ability to maintain

substantial gainful activity despite his initial back injury and even after his

most recent injury. *Id.* The ALJ pointed out that Roggi had not sought other

employment following his termination from Wal-Mart "for unrelated reasons."

(R. 23). Despite receiving "open medical treatment as part of his workers'

compensation settlement," Roggi "has received very little treatment" since his

termination and has opposed all surgical intervention even though it has the

likely possibility of improving his symptoms. *Id.* Repeatedly ignoring medical

advice, Roggi has continued to smoke which does not benefit his physical

problems. (R. 23-24). "All of these factors indicate that the claimant's limitations resultant from his physical impairments are not as limiting as he alleges." (R. 24).

While Roggi also alleges "severe mental health impairments," the ALJ first observed that Roggi "has never received mental health treatment . . . which indicates that his mental health limitations are not as severe as he alleges." (R. 24). The ALJ noted that Roggi's only mental health evaluation was done by the DDS for these proceedings. The ALJ discussed Roggi's testimony that he had not pursued mental health treatment because he had been told that Wichita was the closest location for treatment. (R. 24). The ALJ found that Roggi's testimony was not credible because he lived within the vicinity of physicians who had treated his physical impairments and mental health care providers were also available to Roggi within the same vicinity. "It is reasonable to assume that if the claimant's mental health impairments were as limiting as he alleges, he would have made a more serious effort to seek mental health treatment by now." (R. 24).

Despite Roggi having framed his issue as the ALJ failing to apply appropriate legal standards, the court finds no argument to establish this proposition. Instead, Roggi disputes the ALJ's view of the evidence as conflicting with his own. It is enough if the ALJ sets forth the specific evidence he relied upon in evaluating the claimant's credibility, and he did so, so the

requirements of *Kepler* are met. The ALJ's credibility findings also must be fairly derived from the record, and if so, the court is not to substitute its view of the evidence.

From its own review of the record, the court is satisfied that the ALJ fairly interpreted the evidence as showing Roggi's ability to work after both injuries, his termination for reasons unrelated to his ability to work, and his failure to seek other employment. The ALJ highlighted that while Roggi reported significantly more back pain with the re-injury of his back, the latest MRI did not confirm any significant changes after the first injury. The ALJ also summarized the following based on records from the treating physician, Dr. Michael Smith:

> However, the claimant consistently remained adamant that he did not want to pursue any of the surgical treatment options that were discussed. The claimant's treating physician at the time, Michael L. Smith M.D. noted that he had already tried most non-surgical options by that time with little symptomatic relief reported. During his December 2009 visit with Dr. Smith, the claimant reported that working the cereal aisle had been irritating his condition. Dr. Smith suggested that he could place him under work restrictions of performing deskwork only. This meant that if his employer did not have any deskwork available, the claimant would have just been off work all together, had the restrictions actually been placed on the claimant. After further discussing the issue, the claimant reported that did not need to be limited to deskwork only, and that he would rather just continue working under the current arrangement. The claimant was noted to have continued working at this joy at regularly duty with restrictions thereafter. However, the claimant later testified that his employer never really complied with his assessed work restrictions. Nonetheless, the claimant continued working regularly despite the employer not complying with his work restrictions. The claimant was ultimately terminated from his job in May 2010 for unrelated reasons.

(R. 19). All of these findings are supported in Exhibit 7F as cited by the ALJ. (R. 455-56, 460-62). These same records show the treating physician's opinion was that Roggi had reached maximum medical improvement absent surgical treatment. (R. 455). Thus, the ALJ did not make any speculative inferences in questioning Roggi's credibility based on his refusal to seek surgical treatment for improvement. Nor can the court find error in the ALJ noting that Roggi received comparatively less medical treatment following his termination even though he received open medical treatment as part of his workers' compensation settlement. On the other hand, the court believes it is "open to serious question" for the ALJ to place much, if any, reliance on Roggi's failure to stop smoking as a credibility factor concerning complaints of back pain. *See Madron v. Astrue*, 311 Fed. Appx. 170, 179 n.7 (10th Cir. 2009). This factor, however, does not undermine the ALJ's credibility findings on the pain testimony and the specific evidence cited in support of them.

That Roggi "has never received mental health treatment whatsoever" was a particularly relevant factor in the ALJ's credibility determination, and justifiably so. (R. 24). Even after his mental status evaluation in September of 2010, Roggi did not seek out such treatment. As for Roggi's explanation for not seeking treatment, the ALJ properly could judge it as unreasonable and weight it against Roggi's credibility. The court accepts the ALJ's credibility findings as affirmatively linked to substantial evidence.

**RFC DETERMINATION**

"Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). Because it is for the ALJ, not the physician, to determine the RFC from the medical record, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (citation omitted). "In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file." *Wells v. Colvin*, ---F.3d---, 2013 WL 4405723 at *8 (10th Cir. 2013) (citing *See* SSR 96–8p, 1996 WL 374184, at *5). The RFC determination necessarily reflects how the ALJ has respectively weighed the medical opinions of record.

Under this issue, Roggi argues that the ALJ's RFC finding lacks substantial evidence because the limitations to unskilled work with only occasional contact with the public and co-workers fails to account for all the limitations set forth in Dr. Berg's mental RFC questionnaire of June 2011. As discussed above, the ALJ gave Dr. Berg's opinion only "partial weight" and showed open suspicion and less regard for this questionnaire that Dr. Berg submitted nine months after the examination despite having no apparent

contact with, and examination or treatment of Roggi. The ALJ similarly discounted Dr. Berg's opinion as based on an uncritical acceptance of Roggi's complaints that the ALJ had judged as only partial credible. Finally, the ALJ also reasonably questioned Dr. Berg's opinion, as it did not consider the likelihood of Roggi's improvement with treatment. This is significant because Dr. Berg linked the severity of Roggi's mental problems to coping with recent changes in his physical symptoms and work situation. Thus, the ALJ properly excluded from the RFC determination those work-disqualifying limitations found in Dr. Berg's mental RFC questionnaire. The court finds no error in the ALJ's RFC determination based on his respective weighing of the evidence. There is substantial evidence supporting the ALJ's RFC determination of unskilled work with a public contact limitation appears as being reasonably consistent with a mild limitation of ADLS and moderate limitations in social functioning and concentration, persistence and pace. (R. 538).

In sum, the ALJ adequately discussed and weighed the opinions and evidence he did not rely on in making his RFC determination. His written decision supplies a lengthy narrative replete with record citations that outlines what specific evidence supports his findings and what evidence he accorded less weight or rejected. The record is sufficient in showing that the ALJ considered all the evidence and that ALJ's decision is supported by substantial evidence on the record as a whole.

IT IS THEREFORE ORDERED that the decision of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 20th day of September, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge